Vivian C. McCOY, Plaintiff-Appellee,

v.

Harry E. RICHARDS, Florence A. Richards, and Ashland Oil, Inc., Defendants-Appellants.

No. 84–2940.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1985.

Decided Aug. 30, 1985.

Marc E. Hawley, Mt. Vernon, Ind. for plaintiff-appellee.

James E. Fields, Perdue & Fields, Evansville, Ind., for defendants-appellants.

Before CUMMINGS, Chief Judge, and EASTERBROOK, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

This case requires us to interpret the Indiana Dormant Mineral Interests Act, commonly known as the Mineral Lapse Act. Ind.Code §§ 32–5–11–1 through 32–5–11–8 (1976). Specifically, we must resolve whether a lease of a mineral interest qualifies as a "use" of that interest under the Act and whether the Act should apply to appellants. The district court resolved both questions in the negative and held that appellants' interest had lapsed, thereby reverting to appellee.

## I. The Facts

On August 14, 1942, appellants, Harry and Florence Richards, deeded to appellee and her husband thirty-three and one-half acres of land in Posey County, Indiana, reserving to themselves a one-half interest in the minerals under the land. In June 1951, appellants executed an oil and gas lease to Superior Oil Company, and the lease terminated one year later. The next recorded transaction, and the one that is most relevant to this case, took place in October 1960. At that time, Edmond Richards, a brother of Harry Richards, leased appellants' oil and gas interest to Forest Lindsay for three years. In July 1973, appellants sold their interest in the coal only to Ohio Valley Coal Company, Inc. Finally, in 1980 and 1981, appellants executed one-year oil and gas leases to Coy Oil Inc., and, during the second lease period, Coy Oil drilled a well that began to produce oil.

Appellee claims that appellants' mineral interest has lapsed according to the provisions of the Mineral Lapse Act. The Act provides that any mineral interest owner who does not use that interest for a period of twenty years forfeits it unless he or she files a statement of claim in the county office of the recorder of deeds. Ind.Code § 32–5–11–1. In the event of a lapse, the mineral interest reverts to the "then owner of the interest out of which it was carved." *Id.* At all pertinent times to this suit, appellee owned a fee simple interest in the land in which appellants had reserved a one-half mineral interest.

Section 32–5–11–3 governs the question of what constitutes a use under the Act. It provides, in relevant part:

A mineral interest shall be deemed to be used when there are any minerals produced thereunder or when operations are being conducted thereon for injection, withdrawal, storage or disposal of water, gas or other fluid substances, or when rentals or royalties are being paid by the owner thereof for the purpose of delaying or enjoying the use or exercise of such rights ..., or when taxes are paid on such mineral interest by the owner thereof.

Ind.Code § 32–5–11–3. If the mineral interest owner fails to use the interest within twenty years, the interest lapses unless he or she files a statement of claim within that twenty-year period or within two years after the effective date of the Mineral Lapse Act. Ind.Code § 32–5–11–4. The Act took effect on September 2, 1971. *Id.*

## II. Proceedings Below

On February 9, 1982, appellee filed suit in the Posey County Circuit Court to quiet title to the interest. Appellee named Ashland Oil Company as an additional defendant to this suit because, at the time of the suit, it was purchasing oil from the producing wells on the land. Because diversity of citizenship existed between the parties, appellants removed the suit to federal court on February 26, 1982.

Both appellants and appellee filed motions for summary judgment on the narrow question whether appellants' 1973 conveyance of their interest in the coal to Ohio Valley Coal qualified as a use under the Mineral Lapse Act. The district court de-

termined that this conveyance did not operate as a use and that the deed recording this conveyance did not constitute a statement of claim. *McCoy v. Richards,* 581 F.Supp. 143 (S.D.Ind.1983).

The parties agreed to submit the remaining issues to the district court for determination without a trial. On the basis of the pleadings, the depositions of Harry Richards and Vivian McCoy, and the trial briefs, the district court determined that appellants' mineral interest had lapsed under the Act. Accordingly, the court ordered title to the mineral interest quieted in appellee and dismissed the complaint against Ashland Oil. Appellee does not appeal the dismissal of her complaint against Ashland Oil. Appellants, however, appeal the court's finding that their mineral interest has lapsed. First, they contend that the 1960 lease by Edmond Richards to Forest Lindsay operated as a use of their interest sufficient to prevent its lapse under the Act. Second, appellants argue that they are exempt from the Act's coverage.

### III. Qualifying Uses under the Act

Appellants contend that this court should reverse the district court's decision that their mineral interest has lapsed on the ground that they used their interest within twenty years after its creation. They claim that they used their interest in 1960 when Edmond Richards conveyed a three-year oil and gas lease to Forest Lindsay. The district court rejected this argument, however, finding that appellants' interest had lapsed on September 2, 1973, the date on which the two-year grace period for the filing of a statement of claim expired.

In analyzing whether appellants' interest had lapsed, the court computed the twenty-year period to begin in 1952, when appellants' one-year oil and gas lease to Superior Oil terminated.[1] To prevent a lapse of their interest, the court reasoned, appel-

lants had to have used their interest at some point before the end of 1972. The only possible use during this period occurred in 1960, when Edmond Richards executed a three-year oil and gas lease to Forest Lindsay. The court concluded, however, that this lease did not qualify as a use under the statute because section 32–5–11–3, the provision governing qualifying uses, excludes leasing from the activities qualifying as uses. For this reason, and because appellants did not file a statement of claim within the two-year grace period, the court held that appellants' interest had lapsed.

■ Because this suit is a diversity case, state law controls our interpretation of the Mineral Lapse Act. The only Indiana decision addressing the question whether a lease qualifies as a use under the Act comes from the Indiana Court of Appeals, First Division. *Kirby v. Ashland Oil Co.,* 463 N.E.2d 1127 (Ind.App.1984). In the absence of any authority from the Indiana Supreme Court, this court must follow authority from the state intermediate appellate court if it represents a sound, or even defensible, prediction of what the Indiana Supreme Court would say on the issue. *Indianapolis Airport Authority v. American Airlines, Inc.,* 733 F.2d 1262, 1272 (7th Cir.1984).

■ In *Kirby,* the Indiana Court of Appeals resolved the very issue presently before this court. The court held that a mineral interest lease did not qualify as a use of that interest under the statute. *Kirby,* 463 N.E.2d at 1130. Section 32–5–11–3, according to the court, sets forth three classes of activities that qualify as uses. They are: "(1) actual production by the owner; (2) paying of rents or royalties by the owner for purposes of delaying production; and (3) payment of taxes on the mineral interest by the owner." *Id.,* 463

---

1. The court offered no explanation for its finding that this lease qualified as an "arguable 'use' of [appellants'] interest." This finding seems dubious considering the court's ultimate conclusion that a simple lease does not qualify as a use and considering that no evidence existed that Superior Oil commenced any drilling or produc-

tion activities during this period. Nevertheless, the question whether the twenty-year period began to run in 1942 or in 1952 does not affect our analysis of the issue. Either way, the only possible use of appellants' interest took place in 1960 when they leased it to Forest Lindsay.

N.E.2d at 1129–30. The court reasoned that, because leasing activity is "conspicuously absent" from the section, the legislature did not intend to include leasing as a qualifying use. *Id.*, 463 N.E.2d at 1130. Furthermore, the court concluded that this interpretation comported with the legislature's intention to promote a mineral interest owner's *active* use of that interest. *Id.* at n. 5. According to the court, a simple lease, in the absence of any activities designed to produce or extract minerals, is not an active use of that interest. *Id.*

Although the Indiana Supreme Court has not directly addressed the question whether a lease qualifies as a use under the Act, it has addressed the constitutionality of the Act. *See Short v. Texaco, Inc.*, 273 Ind. 518, 406 N.E.2d 625 (1980), *aff'd*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). An examination of that decision leads us to conclude that the Indiana Supreme Court would resolve the question in the same manner as the appellate court. In the *Short* case, the court noted that the legislature intended the Act both "to remedy uncertainties in titles and to facilitate the exploitation of energy sources and other valuable resources." *Id.* at 526, 406 N.E.2d at 630. A lease under which the lessee never commences drilling or production activities, as in the instant case, does nothing to further the exploitation of mineral interests.

Because simple leasing activity does not fall within the specific language of the section governing uses, *compare* Mich. Comp. Laws § 554.291 (1967), and does not promote the development of mineral interests, this court agrees with the district court that the 1960 lease did not qualify as a use under the statute.[2] Because appellants failed to file a statement of claim before September 2, 1973,[3] their interest lapsed and reverted to appellee according to the provisions of section 32–5–11–1.[4]

IV. The Act as Applied to Appellants

■ Appellants argue that, even if their interest has lapsed according to the terms of the Act, the Act should not apply to them because they were known to appellee and easily locatable by any persons seeking to develop their mineral interest. After they deeded the land to appellee in 1942, appellants moved from Posey County, Indiana, to Crossville, Illinois, a distance of approximately fifteen miles. For purposes of this appeal, we will accept appellants' claim that appellee or any other potentially interested persons knew or could have known how to locate appellants.

Appellants contend that the Act should not apply to them because they were

2. Appellee presented an alternative defense to appellants' contention that the 1960 lease qualified as a use. She argued that, even if a lease qualifies as a use under the Act, the lease in this case does not qualify because it was executed by Edmond Richards, who was not the record owner of the interest. Because we have concluded that a lease does not qualify as a use, we decline to address either the factual question whether Edmond Richards had the authority to execute the 1960 lease or the legal question whether a record owner must execute a lease if it is to qualify as a use under the Act.

3. Appellants claim that they were not required to file a statement of claim under the Act because they recorded the deed in which they reserved their interest, thereby providing constructive notice of that interest to any interested person. Any individual interested in obtaining operating rights from a mineral interest owner, however, only needs to search the public records for a period extending back twenty years. If, during that period, he or she finds that the interest was neither used nor the subject of any statement of claim, he or she may conclude that any interest that existed prior to that time has lapsed. Under these circumstances, the interested person would never learn of any preexisting interest.

4. Appellants present the specious argument that, according to the language of section 32–5–11–1, the lapsed interest reverts to them and not to appellee. According to appellants, because they originally owned the land out of which they reserved their interest, the interest should revert to them. This construction contravenes both the language and the intent of the Act. As previously stated, section 32–5–11–1 provides for reversion to the *"then* owner" of the surface rights. (Emphasis added.) When the lapse occurred in this case, appellee owned the surface rights to the land, thereby granting her title to the mineral interest. *See Texaco, Inc. v. Short*, 454 U.S. 516, 518, 102 S.Ct. 781, 786, 70 L.Ed.2d 738 (1982).

known and identifiable persons. To support this position, they cite an article written by Professor Ronald Polston, the author of the original draft of the Act, a modified version of which the legislature enacted. Polston, *Legislation, Existing and Proposed, Concerning Marketability of Mineral Titles,* 7 Land & Water L.Rev. 73 (1972). In his article, Polston stated that the purpose of the Act was to facilitate the development of mineral resources by eliminating stale claims of persons who have left the area and are no longer locatable. *Id.* In this case, appellants argue, any person interested in developing their mineral interest could have located them and arranged to purchase or lease that interest.

We conclude, for two reasons, that the Mineral Lapse Act should apply to appellants. First, nothing in the language of the statute itself indicates that the legislature intended to exempt known and locatable mineral interest owners from the Act's coverage.[5] Second, the intent of the Act, as interpreted by the Indiana Supreme Court, is broader than that suggested by Polston in his article. The intent of the Act, according to the court, is "to remedy uncertainties in titles and to facilitate the exploitation of energy sources and other valuable mineral resources." *Short v. Texaco, Inc.,* 273 Ind. at 526, 406 N.E.2d at 630–31. We agree with the district court that the elimination of stale claims by identifiable, as well as unidentifiable, mineral interest owners furthers the development of mineral resources. Any owner who fails to make an active use of his or her interest, whether known or unknown, diminishes the potential for the exploitation of mineral resources.

■ At oral argument, appellants styled their contention that the Act should not apply to them as a constitutional claim. Regardless of whether we construe their argument as an equal protection claim or as a due process claim, their contention lacks merit. Their equal protection claim fails for two reasons. First, the Act contains no classification scheme distinguishing between identifiable and unidentifiable owners. Second, because the Act makes no such distinction, appellants cannot prove that they received disparate treatment under the Act. Their due process claim fails because the Supreme Court has already declared, in a case in which the owners were locatable, that the Act does not unconstitutionally deprive mineral interest owners of due process by providing for an automatic lapse of their interests, if unused, after twenty years. *Texaco, Inc. v. Short,* 454 U.S. at 538, 102 S.Ct. at 796.

## V. Conclusion

For the foregoing reasons, we conclude that appellants' mineral interest has lapsed. Accordingly, we AFFIRM the district court's order quieting title in appellee.

---

5. The Illinois legislature, by comparison, exempted known and locatable persons from coverage under the Severed Mineral Interest Act. Ill.Rev.Stat. ch. 96½ §§ 9201–9217 (1983).